I would like to reserve four minutes of rebuttal time. Four. Your Honors, good morning. I'm Jim Tucker with the Equal Employment Opportunity Commission. In Ms. Ochoa's charge of discrimination, she alleged that upon her attempt to return to work from her maternity leave, McLane required her to submit to a physical test. And as a result… Along with everybody else that's been out for 30 days. There was nothing unique about that. That's correct, Your Honor. Well, her charge alleged that she was required to because she had been out on maternity leave, but she also alleged that it is something for folks who are out on maternity, on leave of absence, and also all new hires, and during the Commission's investigation, it turned out that also folks who transfer within the company. So they use it for a number of different purposes, but as for her, it was specific to her returning from pregnancy-related maternity leave. She was unable to pass the test, and as a result, she was terminated. And she alleged that the company has this practice, again, it's a company-wide practice that they require folks when they come back to go through this testing, and that she believed that she had been discriminated against on the basis of her sex as a result of that test. Now in seeking to investigate that charge of discrimination, the Commission has asked for a body of information, and the information at issue in this particular appeal is the request for pedigree information, that is, test takers' names, addresses, dates of birth, or excuse me, names, addresses, phone numbers, and Social Security numbers. And then also, information relating to the reasons why McLean decided to terminate people who had taken the test. The District Court decided not to enforce the subpoena on that information. Can I ask you one question? Yes, Your Honor. I'm going to try to keep away from this mic. It's been giving me problems all week. You're saying now that you only want the reasons for the terminations, right? Regarding the termination decision information, yes, which is separate from the pedigree information. Yes, Your Honor. But when did you limit it to that? Because I guess it seemed like it was always all adverse employment actions predicated on this test, and that ended up, you ended up losing on that issue in the other case, right? That's correct, Your Honor. So when did you narrow it? Because otherwise I would have thought maybe issue preclusion was a problem. Right. I appreciate that, Your Honor. Actually, in the, and I can't speak to why it is we decided that, perhaps it was because the, of the ruling in the ADEA action, but that was, that ruling was rendered prior to the commission's initiating its Title VII subpoena enforcement action. So they were two separate actions, and they were temporally separate as well, Your Honor. So we did limit it to that information, and as we- When? I didn't see any- Oh, I'm sorry. In our briefing to the district court in the Title VII action, we asked for termination decision information as well as the pedigree information, and the court mentioned in its ruling that one of the things that we had asked for was termination information, the reasons for test takers being terminated. The court acknowledged that. It then proceeded not to rule on that aspect of our request, but it is in its own order. It mentioned that that was on the table. And at that point, it had already ruled in that earlier case. That's correct, Your Honor. That, okay. That's correct. I understand. That's correct. Again, this information that we're talking about regarding the pedigree information, if I could speak to that first, Your Honors, we believe is plainly relevant to the commission's investigation into whether or not the practice at issue is a violation of Title VII. That's a little broad. What's the real charge that you're basing it upon? The real charge is Ms. Ochoa's charge, Your Honor, where she alleged that the company itself required her to pass this test in order to continue her employment. And she alleged within that charge also that it requires all employees coming back from a leave of absence to apply or to pass that test. Isn't the charge, the charge actually is what she was complaining about was that she came back from maternity leave and she couldn't pass the test. Well, the commission's investigative authority is not bound by any, let me rephrase this, Your Honor. When the commission investigates a charge of discrimination, it looks at the factual statement that's provided on the charge. And this Court and other courts have recognized in the context of subpoena enforcement actions that the contents of the factual statement of the charge are to be interpreted extremely liberally because the charge of partisan. That may be true, and I've read those cases, but what we say in a court of appeals gets frequently trumped by the people upstairs. And I don't know how you take the Shell Oil Company by Justice Marshall where he talks about there's got to be a specific charge or you have no power. The charge itself is limited, and it looks like to me your subpoena is broader than your charge. And if that's so, then how do you get around Judge Marshall's language? Well, first of all, specifically, Your Honor, to Shell Oil, I'd like to address the fact that in the context of the subpoena at issue in Shell Oil and the charge, excuse me, at Shell Oil was a different type of charge than what we're talking about here. It was a commissioner's charge, which is a charge that can be initiated by one of the five appointed commissioners of the Equal Employment Opportunity Commission to initiate its own investigation. So there are different rules and facets that apply with those particular charges. Here we have a charge. The charge is that Ms. Ochoa was subjected to lawful discrimination in the application of this test to her. And I want to point out, Your Honor, that the district court ruled both in the eight – well, let me put it this way. It ruled in the Title VII context, in this particular subpoena enforcement action, that the proper scope of this investigation was McLean's operations in the grocery division nationwide. And McLean has not challenged that on appeal. Well, okay. That's nationwide. But how do you get past the charge that it has to do with women who come back from maternity leave and there have been – if what Justice Marshall is saying here, you have no power to do that. Well, Your Honor, what is being suggested by this – by the charge? Let's say that – I think I'm trying to – I think I'm understanding your question more clearly. I just don't know why it didn't go back to make another charge, and it seems to me you're riding the wrong horse. Well, I don't understand why we would need to make another charge, Your Honor, if the factual statement that's alleged contains a statement that the company – let's limit it just to pregnancy. Let's say we're just talking about pregnancy. Okay. She says that I was discriminated against because McLean has a policy of requiring folks who come back from pregnancy leave, such as her, to take this physical test. And as a result, since we all know and it's unconsensual that pregnancy discrimination is sex discrimination, that we then have an allegation that the company has a nationwide practice of discriminating against women – sex discrimination – in the application of this test. So I – because pregnancy is sex – I think your gender claim is fine, and I can see why they were giving you all this information, but you wanted more based upon what seems to me a broader charge, a different charge from the one you just mentioned. Well, I don't believe – Why does – why is the judge wrong when he doesn't give you all the phone numbers? Well, Your Honor, the judge is wrong because the relevance standard is extremely broad and requires disclosure of any information that might be relevant to the charge under investigation. And for us to be able to – Charge under investigation. That's right. And the charge under investigation here, Your Honor, is Ms. Ochoa's allegation that McLean has a test that it applies nationwide in its grocery division – as we're delimiting it this time – in violation of Title VII on the basis of sex. That is her allegation. Sex discrimination – pregnancy discrimination is sex discrimination, and because of that charge – because of that statement of the charge, the Commission is entitled to look at evidence that would be relevant to that investigation in determining whether or not that violation is present. To that end, the access to phone numbers, contact – basically, contact information is so the Commission can talk to folks and decide what it is that they specifically experience. Men and women. I'm sorry? Men and women. Men and women because – Even though this is a charge against a woman on the basis of gender, you can go all over the – all over the board on other charges, it seems. Well, what we can do, Your Honor, is we can speak to individuals who have taken the test to determine whether or not men's treatment parallels what women were treated like. The proper comparison in a sex discrimination case is a comparison of how men are treated to how women are treated. So, naturally, we would need to talk to men as well to ask what their experiences were with the test. Well, wait. You'd get the results with what you have now. You want to go talk to them. I'm sorry, could you repeat? You can get the results now with the subpoena you've got out, the results of the test. We have raw test information, that's correct, Your Honor. They get you all that. What you can't do as of now is go have a telephone conversation with them. What we can't do is we can't talk to them about what their actual experience is. And, again, this Court and the Supreme Court have each identified that in determining whether or not a pattern or practice of intentional discrimination is present, the Commission is entitled – or, excuse me, evidence of the anecdotal evidence is relevant to that there's actually intentional discrimination that's present. And that's why the Commission is entitled to access this information, that's why it's relevant to this type of investigation, and that's why it's important that the Commission access this information. Again, the relevance to that, the relevance of that anecdotal information goes to giving us an idea of what exactly is going on because, again, we still believe the charge covers more than simply whether or not it's pregnancy discrimination. She alleges she was discriminated against because of her sex. And because this triggering event was for coming back from medical leave, it's very possible that if she'd come back for some other reason, that might have been why she'd been out for some other reason. Maybe she'd sprained her ankle and came back to work and was forced to take this test. There may still be some component of the test that is discriminatory or not. And that's the point of the investigation, Your Honor. The Commission's trying to find out if there is a violation, not that there is a violation and collect evidence in pursuit thereof. That's why some of the information that we're seeking regarding contact information is important. Even if McLean were correct that we were only looking into whether there is a purely statistical or a disparate impact analysis because it's determined whether or not the test is valid and whether or not the employer has a defense, even if there is a statistical imbalance, would require us to take a look at the actual test or take a look at the test and see how it is that it actually plays out, not only in how folks' experiences are with the test themselves, test takers, but also how it relates to the jobs that they actually do. Because the Supreme Court recognized in Albemarle paper, what's important is not testing individuals in the abstract, but testing them in relation to the jobs at issue. And so this is all very important information for the Commission to access, to be able to pursue its investigation to determine whether or not there is actually a violation of Title VII. Thank you. Maybe just, you have a little bit before you get to four minutes, on the reasons for the terminations, what is it exactly that you want our court to do on that issue, given that the district court never? Well, this court has de novo review. This court could issue a ruling based on, again, we've discussed it in our briefs, each side has discussed it to some extent, what happened in the district court and the arguments that we have on that position. And specifically, I guess I'd point out to this court that what happened in this particular action, McLean did not contest the relevance of this information. What they contested was the undue burden that would be caused by it. Right, and that's what I, I look at this record and I don't see how we could possibly make a judgment call in the first instance on that issue. If this court believes a remand is appropriate on that question, I don't think the Commission would dispute that. That's what I was asking, what more could we do in your judgment? Well, we believe that there is sufficient evidence in the record from looking at what was specifically identified that in the, that the reason that they couldn't provide this termination decision information, which is distinct from the triggering information in the ADEA context, was because they don't have termination decision information in their IPCS database. That's the database from the testing company that has the testing numbers. Well, of course, their reasons for terminating someone aren't going to be in a database from a third party. So, they didn't argue that it's not in their PeopleSoft human resources database. So, I think that there is sufficient. I thought from the other case, the allegation was that we would manually have to search every single file to figure out, isn't, I mean, that does sound rather burdensome. For a different type of information, Your Honor, specifically, what they said was that we don't have, we don't track whether or not a failure of the test automatically triggers an adverse action. So, what they'd have to do is go back and look at the testing results and then compare that manually to any adverse actions that may have happened. Now, that's across a broad scope. That's not just people who are terminated. That's non-hires. That's non-promotions. And that would involve looking at a different body of information, as opposed to here, again, they have not argued that those factors are at play regarding termination decision information. And they had every opportunity to do so, below, Your Honor. Do you want to save the balance of your time for rebuttal? I do. Thank you. Very well. Let's hear from McClain, please. Thank you, Your Honor. Good morning. Ron Manthey, Morgan Lewis, on behalf of the appellee. The most critical thing that this Court can address is the actual content of the charge. And more importantly, it is the factual content of the charge. And let me give you a reason. If one only checks sexual discrimination, it is not necessary or understandable as to what to investigate, or what the relevancy or the scope of the charge is. Thus, the Court, and the EEOC itself, requires that there be a concise and clear summary of the facts. Then, in cases involved with whether the scope of the charge equals the scope of the case, relevancy issues, etc., the courts, including the Ramirez case in this Court, have stated that the facts that are stated are what's critical. And let's look at the facts. She says, I returned, I took the test twice, I failed it twice. The test is applied to all people who are new hires, who come back after 30 days, and in this, did not mention, but in the case of transfers, that applies to everyone. What is more important is what the charge did not say. The charge did not say men are treated differently. The charge did not say that it is applied inconsistently, or that there is a subjective factor, or that my manager ignored the test and did not bring me back anyhow. It is pure and simple, a facially neutral test. That is the critical aspect to govern the authority and the basis and the scope of what the EEOC can do in this case. The EEOC has to charge, in addition to their charge, for you to come to the conclusion they could continue with the examination they wish to make. Well, if the charge doesn't have it, then it would have to be through their investigation. I'm just saying a new charge. Oh, in a new charge. Yeah. Well, the new charge would have to, well, let's look at the Wood case. The new charge would have to assert that there was intentional discrimination, that there was an action. As stated there, a facially neutral policy does not support a disparate treatment case, pattern of practice or otherwise, unless there is an allegation of animus, treating men differently, et cetera. So if those factors are there, you can almost track down what they're saying they want to go look for. They want to go look for things under the umbrella of just sex discrimination blocking the chart to say, wait a minute, were there other people who were hurt? Were there other issues? Was there subjectivity? They've not presented throughout their investigation to the lower court or to this court any evidence that any of that has occurred. Even today, I listened closely. It was it may be, it could be, it might be. Counsel, that's the purpose of an investigation. They don't have to come in and prove any kind of a prima facie case to get access to information. They're just investigating. I'm so sorry, Your Honor. Are you finished? I'm sorry. I apologize. Access to proof of the charge. No. Wait, wait, wait. That's not what shows. No, no, no. I meant to use the wrong word. Access to some showing of the charge investigated and the facts occurring in that charge. The facts in that charge are only of a facially neutral policy that she could not pass. Let me be sure I understand your answer to Judge Watford. Are you saying that before the commission has the right to investigate further, that the complainant, in this case a woman, has to in effect state a cause of action and only once that condition precedent occurs can the commission then go forward and investigate, but cabined by the scope of the original charge? Is that what you're saying? No, Your Honor. Okay. Help me out. I am not saying that. I am saying that if you start, as the Seventh Circuit said in United and the Eleventh Circuit said in the recent Royal Caribbean case, if you start with the facts of an individual charge and you start your investigation into the assertions there and items that are relevant to that assertion, if the EEOC brings forth other information and presents it as being something that provides a nexus, provides a method to, instead of just simply saying it might, it may, but has something that establishes the ability to go on other than a fishing expedition, that is also a means by which that investigation can expand. So it is a broad investigatory authority. We're not arguing that. But it has to have some primary basis or you eviscerate the purpose of the charge. Now you're coming back to the question that I asked in the first place, at least as I understand it. I understood you to say that the scope of the EEOC's investigatory power is cabined by what is alleged in the original complaint. You said, no, that's not true, and yet you seem now to be coming back to the same point. I apologize for not being clear. So let's take the specifics here. In this case, we've already talked about what she alleged. You say, if I understand you correctly, that, in effect, she states, no, there's no animus there. It's neutrally applied. It applies to men. It applies to women. There's no allegation of a supervisor misusing the information. In short, you're saying this woman doesn't state a cause of action. I'm simplifying it. But you're saying that unless she does so, that that severely restricts the ability of the EEOC to investigate matters of a similar general nature? Is that your point? I don't quibble, but I assert that it's not. Words cause of action are not the applicable things. Let's change those to something more comfortable for you. Stated however you wish, the bottom line is you're saying there are certain elements, such as scienter or animus or whatever, abused by a supervisor, but something that would trigger the involvement of the EEOC other than just a general phishing expedition. The facts that are asserted are the parameter of the EEOC's initial investigation. Okay. So you are saying that the initial complaint is what cabins what they can ask for. What they start with. And in this case, because it is national, we gave them all of the national statistics, all of the issues with regard to women and, in the first case, age factors. We gave them the test. We gave them the test results. We gave them the videotaping of the third independent party that went in and did the job task analysis. We gave them the job task analysis. We gave them, as I said, the videotape, which showed how they got to it and applied it against DOL. So we haven't cabined it in the sense of this is one person. What the EEOC has gone forth is to say I want pedigree information, and I will address in a moment the information about determinations, because we want to go look. That is where they step further beyond. This is not a case like in Cronus where it was a geographic and temporal scope case, and the courts had given them all the information across the country. That's already been given, Your Honor. But there has to be some nexus to go further. Now, that nexus can come from either the statement of the facts or from the EEOC's own investigation that uncovered, say, at the facility that she worked at, that people were being applied differently or that there was some information with regard to how it was applied. But as you've heard, and the court, which was correct in this matter, heard, it is not present to do otherwise without requiring some information to be presented that shows a nexus to the next step. One has eviscerated the purpose of the charge. So you look originally to the charge. Yes. They start their investigation. Yes. If they find something that warrants further exploration, then that's the new nexus, and they can go from there if they find something. I gather your point is there's no legal authority to just go on a fishing expedition. A woman comes in and makes a Title VII claim. They say, I want all the information that you've ever had about any employee or where they lived and so on and so on, so we can talk to them and see whether there's been a violation. You're saying that's what they've done. You don't like that. Well, not only do we not like it, we think it expands and eviscerates the purpose of the charge. And this is how Judge Snow dealt with it. He dealt with it just as you said and just as the Seventh and the Eleventh Circuit in the cases I cited said. Here, you have asked for this. I agree. You get the test information nationwide. I agree. You get the JTA. I agree. You get to look at the process across the board. But what he said is I don't understand why you would at this point with the evidence that you presented, because remember, 98% of the argument to him was about an ADA issue, not these. And he said, I don't see it. Go do your investigation. If you find something else, come back to me, and I will hear it. So Judge Snow did not say, no, you can never have it. Judge Snow did not say it will never be part of your case. Judge Snow said, based on the information you presented to me and based on the claim and based on looking at the charge, which is only a facially neutral policy, you don't get it until you come back with something. And what the EEOC is arguing is that even framed in terms of the very little bit of information that Ms. It gives rise to the potential for a pattern in practice claim. So they don't need to go and uncover additional information to expand the scope of the investigation. Their point is that the scope of the investigation set by the charge itself already encompasses exactly the information you just referred to. Your Honor, that is their argument. It sounds completely right to me because Ms. Ochoa's complaint is not just that my manager took some adverse action against me, purely personalized adverse employment action. Her allegation, at least as she's framed it, is that there is this nationally applicable policy that I think is the cause of the discrimination against me. And why doesn't that, by definition, put into play the different theories that the EEOC has offered that go well beyond just Ms. Ochoa's individual circumstances? Thank you, Your Honor. I'll address that. Because to get there, one has to assume that simply because she said sex, there is an unlimited plenary authority to go look at anything that's there. That does not permit you to file a lawsuit on that claim. That does not permit you to go forward on any of the jurisprudence. This court itself said, and would, that if you allege a facially neutral policy, there must be more for the court to have to allow an amendment or to even go into disparate treatment. Disparate treatment is where you get into all these other issues. On disparate impact, as you know, the evidence of proof is not one of intent. Remember, this test can be analyzed straight up. It is a strength-based capacity test. That strength bench capacity goes to eliminating injuries. As we admit it, it does not mimic a particular lifting position as much as it goes with a strength. That test, as they allege in the petition, and the EEOC says nothing differently, is applied to everyone. Our point is that if you have a facially neutral policy and if there are no other assertions, to go in search of other theories is a fishing expedition. And that was upheld through the — Just stop right there. Go ahead. So let's just say disparate impact is the only theory that Ms. Ochoa's complaint even could potentially trigger. They say that, well, the reason we need to actually contact people who've taken the test is so that we can determine whether, in fact, the company has — I can't remember what the exact phrase is, but some legitimate reason for maintaining the test, right? So it's more to — they know what your client's affirmative defense would be to that charge, and they want to see if there's actually support for it before they launch any kind of a complaint against the company. Why isn't that legitimate? Because they have been given, on this particular test, the entire analysis that came up with, through including a deposition of Dr. Gilliam, as to how it was tested, reviewed, and applied with the DOT standards. They are two separate third parties that provide the objective standards. This goes into a mathematical formula. This is not a subjectively applied test or an inconsistently applied test. There are no allegations of that. And all of that information has been given to the court. So Judge Snow said, at this point, I don't see a reason to give you pedigree for everyone across the country, males and females, pass the test, never pass the test. The issue that Judge Snow said is bring something back to me, because he gave them 95 percent of anything that they wanted, and we turned it over voluntarily with regard to the gender issue, and it is sitting there. So one has to ask, what is the relevant purpose of that? And as Judge Snow says, I see this on board that it is not relevant at this point and that there is the potential for harm and the potential for going beyond the charge. So a ruling by this court is, quite frankly, premature. We would recommend, as you asked the other counsel about what to do, is that you direct it back to Judge Snow and say Judge Snow was right. He followed the right steps. He made the determination of relevancy and of burden. And he said, but come back to me. Go through the normal process. Well, hang on. On pedigree, there's no—you haven't raised any issue that there's an undue burden, have you? Yes, we have. On pedigree? No, on the pedigree actual data, yes. It's only relevancy. Right. And that's a legal issue that we need to resolve. There's nothing to remand. We just need to make a call on that. Maybe you could talk for a second about the reasons for the terminations, because you have raised, as I understand it, an undue burden, arguments to that information, right? The information in the computer records does not contain why particularly a person was let go. So let's assume that the person failed the test. Let's assume the person also failed their drug test. Let's assume the person also failed a credit test. Let's assume the person didn't come back to work and said, hey, I found a better job. The records, the computerized records, will not show any of that, and we've provided an affidavit to the court to that purpose. It was also provided before, which is why Judge Snowe—remember, same subpoena question, same parties, same judge, same evidence—said, we will give you, if they were terminated for any reason within 90 days, you have to turn that over, because otherwise it would require a manual search. And the judge said himself that the first 2,000 or more who were not given a job, the records don't even contain any of that information, possibly not even any of the pedigree information because they were never logged into the system. So the process to come by a reason for or triggering would not only involve manual review, but would involve the specifics with regard to possibly even going to the base from which they were terminated to see if there was anyone there who could remember what was the reason. And you're saying that's true not—just put aside people who were never hired. You're saying that's true for people who were already employed who took the test and then were terminated, just that whatever subgroup of people. Even for that subgroup, you would need to do manual searches to figure out what the reasons for the termination were? For reasons for termination that are sometime afterwards, where the person has been employed, passed the test, I can't tell you, but I know that if, again, there were multiple reasons, there is not a coding mechanism that can tell us it's particularly for theft or particularly for any other particular reason. It could be just for disciplinary reasons. And so that is where the problem comes forth. But, Your Honors, in my closing, if I may, if I give you 30 seconds, we have a charge. We have the factual basis, which is the core of Shell Oil and all the progeny from the 3rd, the 6th, the 7th, the 10th, and now the 11th in the cases we've cited to you that says you must start with that. The 7th and 11th in the recent years, in just 2012 and so, it said start with that investigation, see what else is there to grow it. Judge Snow said that was proper. The relevancy is not may, could, might be. It has to show some reasonable expectation of finding something more that is not in the charge. The EOC has brought nothing to you. Judge Snow was correct in how he did it. Judge Snow was balanced. And he said, bring me back. I'm not telling you you don't get this, but bring it back to me. I think that the information about the burdensomeness is an issue preclusion. It has obviously been decided, but if not, it should go back to Judge Snow for a decision. Thank you. Could I ask a question? Sure, go ahead. This one is bothering me, and it may not go anywhere, but I want to make sure I understand your position. Did the district court err by not stating why it declined to enforce the EOC's subpoena requirement that McLean provide reasons for the termination of certain test takers? He made a decision, but he didn't provide reasons, and I'm wondering whether or not that infects his decision. The decision in this has to be based on the fact that there are two parallel subpoenas and the same evidence that presided in the two parties. The judge had already heard that evidence and already seen it in the subpoena and the evidence that we presented by affidavit to the judge in the second hearing, which is the one that's before this court. He had valid information before him to determine on a factual basis whether it would be burdensome. He made the conclusion. He did not reference particular findings on the burdensome. I believe that the prior decision is the decision that he is relying upon and that is issue preclusion, but if not and if this court were to find otherwise, I believe because of its factual basis that has a mix of facts and law, it should go back to Judge Snow for a more clear statement. Let me ask another question. Was any objection made to a failure of not stating reasons? No, Your Honor, by neither side. Okay. That wasn't clear in the briefs, and I thank you for that. Thank you very much. We'll hear a rebuttal from the EOC. Thank you, Your Honor. Listening to counsel's presentation, I'm struck by the present what they're offering as a standard to this court, which would basically turn the current law on its head, requiring charging parties to essentially articulate legal standards in their statements, in their factual statements in charges of discrimination, and to permit the respondent employer to determine the scope of investigations by the commission into charges and what information is or is not pertinent to those investigations. Settled law of this circuit, law of other circuits, as we've identified in our briefs, runs exactly contrary to what they've asserted is the proper standard here. There's no fishing expedition here, Your Honor. This investigation has at all times been cabined within the terms of the charge as it's presented the factual statement within the charge. We're not looking for anything like, as in the Kronos decision, where the court recognized that there was an extension of the investigation to a different basis of discrimination, something that was outside the scope of the charge. This is exactly within the scope of the charge. Ms. Ochoa alleged that she was subjected to a practice that was discriminatory because of sex, and that's what the commission's been investigating. This question about the nexus and suggesting that courts need to get into some kind of a merits-based threshold conduct in the management and micromanagement of commissions' investigations is also precluded by the Supreme Court's decision in Shell stating that any attempt by district courts to determine whether or not there is merit to a charge during the investigation or conditioning access to relevant information based on the ultimate ability to prove that claim is reversible error. This court has similarly suggested on the same lines in Children's Hospital and the Carrick Tribe decision that when confronted with a defense or an allegation of a defense to liability in the enforcement action, that is not a reason to deny relevant information. The question is simply whether or not under the extremely broad standard for relevant information, whether the information at issue might cast light on the allegations presented in the charge, whether the commission's access to that information is appropriate. Again, in this case, we believe that pedigree information and the termination decision information passes that test. So the commission's position is there is no nexus requirement? Absolutely not, Your Honor. In connection with any investigation? Well, our position is in this particular case, Your Honor, we don't see any reason to – as I understand McLean's argument, it is to suggest that what the district court did here, which is to say come back when you have a statistical case showing systemic discrimination. That is a merits requirement. That is a showing of the merit of the charge before we can access relevant information, and that is plainly off the table. In the Ford Motor Credit decision that McLean cited as support, what that court did in the Sixth Circuit was it said, look, the commission has asked for 12 years' worth of information relating to promotion decisions in the activity. And the court said that looks like the 12 years out information is awfully tenuous. That's a little too far out. So here's what I'll do. You can have three and a half years, three years and 300 days, and take a look at the information you have there. And if based on that information, it looks like more information would be relevant, some older information would be relevant, you can come back. The court did not say show me based on that three year and 300 day information that there's a violation, and then you can have access. Applying that concept to this case, McLean has alleged that there are a number of instances where their computer records simply do not contain the information that the commission seeks. Right, Your Honor. So under that circumstance, if they say we don't have this information, is that a sufficient answer? Or does the subpoena require them to go around and inquire, as was suggested, of people who may have known the individual who was terminated and that sort of thing? Well, as an entity, McLean is required to provide information that it has. It's not required to provide something it doesn't have.  But to be specific, it raises an issue that was, again, brought up by opposing counsel. The fact that McLean has produced a body of information that it believes is sufficient, validity tests that it believes are sufficient, that answer the question and, of course, in its favor, that's not the test for whether or not the commission has access to other information. It's not how much you've already given, it's whether the information we're asking for is valid. Okay, so you say you're entitled, if they've got it, you're entitled to it, but they don't have to produce it if they don't have it. If they don't have it, they can't produce it. Now, does that mean that if they could talk to somebody that's still within their control as an employee, that they don't have it? I think that might suggest that they do have it. There may be an analysis of undue burden. That's a separate issue. And I do very, very briefly, Your Honor, just want to point out that while opposing counsel did discuss the issue of undue burden in the ADEA context and the overlap here, again, the question of whether or not the ADEA analysis applies in this case was never raised by opposing counsel below in the Title VII action. And as Your Honor pushed on the question of what was going on, what databases are you, is it clear that you can't access this information? We didn't get a specific response to the statement that I made in my opening argument. I made it brief and I stand by that their argument was that they don't have it in their ICPS database, not so much regarding their people's office. What is the status of this ADEA claim? At this point, Your Honor, the investigation is on hold, as I understand it. We're waiting to see what happens with the remainder of the information we're looking for. Is it a separate claim? I'm sorry. It's a separate investigation, Your Honor. Is there a charge? There's not a charge. Under the ADEA, the commission is not required to have a charge. It's just like the Fair Labor Standards Act. In fact, it's the same authority. I thought you had to have a charge to have power. Under the ADEA, we do not, Your Honor. That's separate. You've got free reign on that one. I'm sorry? You've got free reign on that one. Well, we don't have free reign. Well, there has to be some. The basis is determining. It's like, let me put it this way. It's the same standard that applies in the Fair Labor Standards Act. And the commission's investigation will be governed by how it defines what it believes it's investigating. So if we sit down and say that we want to ask you information about X practice, we're not going to expect that we can expand that beyond, without some basis for expanding it based on other information being gathered. But that has nothing to do with the issue we have before us here. Absolutely not, Your Honor. Thank you. Thank you. Thank you, Your Honor. We're both counsel for the argument. The case just argued is submitted.
judges: Wallace, Smith, Watford